# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JONATHAN PAPE, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Case No. 3:20-cv-1324 (VAB) |
| | : | |
| ROLLIN COOK, *et al.*, | : | |
| *Defendants*. | : | |

## RULING AND ORDER

Jonathan Pape ("Plaintiff"), is currently confined at Cheshire Correctional Institution ("Cheshire"). He has filed a motion for appointment of counsel and a civil rights Complaint *pro se* under 42 U.S.C. § 1983 against four employees of the State of Connecticut Department of Correction.

For reasons set forth below, the Court will **DISMISS** the Complaint in part and **DENY** the motion for appointment of counsel.

The requests seeking injunctive and declaratory relief for violations of Mr. Pape's federal constitutional right and rights under state law, all federal constitutional claims asserted against Commissioner of Correction Rollin Cook in his individual capacity, the First Amendment association and access to courts claims, the Eighth Amendment conditions of confinement claims related to restrictions on showering, laundry, and recreation and the Fourteenth Amendment due process and equal protection claims are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The requests for monetary damages for violations of Mr. Pape's First, Eighth and Fourteenth Amendment rights and for violations of Mr. Pape's rights under state law by the Defendants in their official capacities also are **DISMISSED** under to 28 U.S.C. § 1915A(b)(2).

The following claims will proceed to the discovery phase: the First Amendment freedom of speech claim related to denial of telephone calls, and the First Amendment freedom of speech claim involving the denial of outgoing mail to proceed against Warden Martin and Lieutenant

O'Casio in their individual capacities; the Eighth Amendment claims related to Mr. Pape's confinement in the quarantine cell for two weeks with his cellmate who had exhibited signs of COVID-19 without personal protective equipment to proceed against Warden Martin. Lieutenant O'Casio and Medical Supervisor Shea in their individual capacities; the Eighth Amendment claim related to Mr. Pape's confinement in the quarantine cell for two weeks with no opportunity to dispose of his trash to proceed against Warden Martin and Lieutenant O'Casio in their individual capacities; and the state law claims against all Defendants in their individual capacities.

## I.     COMPLAINT

Mr. Pape claims arise from his confinement, as a sentenced inmate, in a quarantine cell in a restrictive housing unit at Corrigan-Radgowski Correctional Institution ("Corrigan-Radgwoski") from March 30, 2020 to April 14, 2020.[1] Mr. Pape contends that during this period of confinement, Commissioner Rollin Cook, Warden Robert Martin, Lieutenant O'Casio and Medical Supervisor Shea subjected him to conditions that posed a serious risk of harm to his health.

### A.     BACKGROUND

On March 30, 2020, Mr. Pape allegedly resided in Cell 322 in B-Pod Unit, on Special Management Status. Compl. ECF No. 1, ¶¶ 11-12 (Sept. 8, 2020). At some point that day, Mr. Pape's cellmate allegedly began to experience symptoms of COVID-19 including dizziness, shortness of breath and a loss of taste and smell. *Id.* ¶ 12. An officer allegedly escorted Mr. Pape's cellmate to the medical department to have his vital signs checked. *Id.* Mr. Pape allegedly

---

[1] State of Connecticut Department of Correction records reflect that on July 17, 2017, a judge sentenced Mr. Pape to a forty-year term of imprisonment pursuant to his conviction for felony murder. *See*

2

experienced no COVID-19 symptoms. *Id.* When officers allegedly escorted Mr. Pape's cellmate

back to the cell, they allegedly informed Mr. Pape that Medical Supervisor Shea had placed him

and his cellmate on quarantine and that neither he nor his cellmate would be permitted to shower,

use the telephone, or go to recreation. *Id.* ¶ 13.

       Mr. Pape allegedly informed the officers that he had no COVID-19 symptoms and that

they could not deprive him of recreation, showers, or telephone use without a hearing. *Id.* ¶ 14.

The officers allegedly left Mr. Pape's cell but returned a short time later. *Id.* ¶ 15. The officers

allegedly indicated that Warden Martin had authorized them to permit Mr. Pape and his cellmate

to shower, but had not authorized them to permit either Mr. Pape or his cellmate to participate in

recreation or to use the telephone. *Id.*

       On March 31, 2020, officers allegedly instructed Mr. Pape and his cellmate to pack their

belongings, because they had been assigned to a quarantine cell in the same housing unit, Cell

225. *Id.* ¶ 16. Mr. Pape and his cellmate allegedly initially refused to move to the new cell. *Id.* ¶

17. Later that day, officers allegedly informed Mr. Pape that Warden Martin and Lieutenant

O'Casio had authorized them to use of a chemical agent and physical force, if he or his cellmate

continued to refuse to move to the new cell. *Id.* ¶ 18.

       Mr. Pape and his cellmate allegedly complied with the order and moved their belongings

thirty feet down the hall to the new cell. According to Mr. Pape, at no time during the move to

the new cell or during his confinement in the cell did the Defendants provide Mr. Pape or his

cellmate with personal protective equipment. *Id.* ¶ 19. Mr. Pape allegedly subsequently

submitted requests to the medical department and Lieutenant O'Casio to be removed from

quarantine cell because he had not exhibited COVID-19 symptoms and he did not want risk

_____

http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=386417.

exposure to COVID-19 by remaining in the cell with his cellmate who had exhibited symptoms. *Id.* ¶ 20.

Before being placed in the quarantine cell, medical staff members allegedly had been checking Mr. Pape's blood pressure daily. *Id.* ¶ 21. After his placement in the quarantine cell, the daily monitoring of his blood pressure allegedly ceased. *Id.* Mr. Pape and his cellmate allegedly remained in the quarantine cell until April 14, 2020. *Id.* ¶ 25.

During his fifteen-day confinement in the quarantine cell, Mr. Pape allegedly experienced anxiety and emotional distress. *Id.* ¶ 21. Prison officials allegedly did not permit Mr. Pape to make telephone calls, clean his cell, go to recreation, engage in visitation, or put his trash outside the cell to be picked up. *Id.* ¶¶ 22-24. In addition, prison officials allegedly did not provide Mr. Pape with clean laundry and neglected to collect his mail. *Id.* ¶¶ 23-24. In response to his requests to be permitted to shower, prison officials allegedly provided him with a small bucket to be used to bathe himself. *Id.* ¶ 22.

On April 14, 2020, prison officials allegedly released Mr. Pape and his cellmate from quarantine and transferred them back to Cell 222. *Id.* ¶ 24. That cell allegedly had not been cleaned since Mr. Pape and his cellmate had last been housed in it on March 31, 2020. *Id.* After Mr. Pape and his cellmate had been moved to Cell 222, prison officials allegedly permitted them to shower and use the telephone to call their families. *Id.* ¶ 25.

According to Mr. Pape, at no time during the period from March 30, 2020 to April 14, 2020, did Warden Robert Martin, Lieutenant O'Casio, or Medical Supervisor Shea post any policies regarding the confinement of inmates who were suspected of having contracted COVID-19 or those inmates who had been in contact with other inmates who may have contracted

COVID-19 or any policies regarding limitations on showers, telephone use, or recreation. *Id.* ¶ 27. Nor allegedly did they post any Centers for Disease Control and Prevention ("CDC") guidelines to be followed by prison officials and inmates during the COVID-19 pandemic. *Id.* Mr. Pape allegedly experienced painful migraine headaches, body aches, loss of sleep and appetite, anxiety and emotional distress during and after his confinement in the quarantine cell for fifteen days. *Id.* ¶ 33.

### B.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)). This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P.

8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).[2]

---

[2] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over

## C.     DISCUSSION

Mr. Pape claims that during his fifteen-day confinement on quarantine status, the Defendants violated his First Amendment rights to free speech and association, his Eighth Amendment right to sanitary and safe conditions of confinement and his Fourteenth Amendment rights to due process and equal protection. He also asserts state law claims of negligence and intentional infliction of emotional distress and claims under Article First §§ 4, 5, 8, 9 and 20 of the Connecticut Constitution.

### 1.     Official Capacity Claims - Monetary Damages

Mr. Pape sues the Defendants in both their individual and official capacities. He seeks declaratory and injunctive relief and compensatory and punitive damages.

#### a.     Money Damages

To the extent that Mr. Pape seeks monetary relief from the Defendants in their official capacities, those requests are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quem v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

Accordingly, the requests seeking compensatory and punitive damages for violations of Mr. Pape's federal constitutional rights by the Defendants in their official capacities are dismissed under 28 U.S.C. § 1915A(b)(2).

---

any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

Sovereign immunity also bars requests seeking monetary damages from state employees in their official capacities for violations of state law. *See C.R. Klewin Ne., LLC v. Fleming*, 284 Conn. 250, 258 (2007) ("The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law." (citing *Miller v. Egan*, 265 Conn. 301, 313 (2003) ("[A] suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (internal quotation marks and citation omitted)))). Thus, to the extent that Mr. Pape seeks monetary damages from the Defendants in their official capacities for violations of his rights under the Connecticut Constitution and for engaging in conduct that constitutes the torts of negligence and the intentional infliction of emotional distress, those official capacity claims also are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

### b.    Declaratory and Injunctive Relief

Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). In determining whether *Ex Parte Young* applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

Mr. Pape seeks a declaration that the Defendants violated his federal and state constitutional rights in connection with his confinement in a quarantine cell from March 30,

2020 to April 14, 2020. Compl. ¶ 36. Mr. Pape includes two requests for injunctive relief. In the first request, he seeks an injunction directing the Defendants to "stop the violation of inmates constitutional rights [and] the deprivations of privileges when quarantining inmates." *Id.* ¶ 37 In the second request, Mr. Pape seeks an injunction directing the Defendants to "remove [him] from the conditions of confinement in the SRG Unit and [to] return him to general population with restoration of all privileges and the removal of all SRG designations and information from [his] prison record." *Id.* ¶ 38.

Mr. Pape is confined at Cheshire. The request for declaratory relief and the first request for injunctive relief are addressed to conditions that occurred at Corrigan-Radgowski in 2020. Absent a request for relief to remedy ongoing violations of Mr. Pape's rights or a threat of a violation of his rights in the future, a declaration that the Defendants violated his First, Eighth and Fourteenth Amendment rights in the past is barred by the Eleventh Amendment. *See P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (The Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past."); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief" (citations omitted)). To the extent that the requests for declaratory and injunctive relief are asserted against the defendants in their official capacities for violations of the Connecticut Constitution, those requests are also barred by the Eleventh Amendment. *See Vega v. Semple*, 963 F.3d 259, 283-84 (2d Cir. 2020) (holding plaintiff's claims for "prospective relief against Defendants in their official capacity for violations of the Connecticut Constitution and state law . . . are indeed barred by the Eleventh Amendment under the *Pennhurst* doctrine." (internal quotation marks omitted)).

The second request for injunctive relief pertaining to Mr. Pape's designation as an SRG member is not related to the allegations that Mr. Pape was confined in a quarantine cell at Corrigan-Radgowski for two weeks in March and April 2020. The Court concludes that it would not be appropriate to grant Mr. Pape relief that is unrelated to the allegations in the complaint. *See, e.g.*, *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (a preliminary injunction is appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Stewart v. INS*, 762 F.2d 193, 198 (2d Cir. 1985) (holding district court lacked jurisdiction over motion for injunctive relief relating to conduct not alleged in plaintiff's complaint); *Torres v. UConn Health*, No. 3:17-cv-00325 (SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim asserted in motion was unrelated to underlying claims in complaint); *Lebron v. Armstrong*, 289 F. Supp. 2d 56, 61 (D. Conn. 2003) (denying inmate's request for injunctive relief because, *inter alia*, it was based on allegations that were different and unrelated to the facts pled in the underlying complaint).

Accordingly, the requests for declaratory and injunctive relief asserted against Defendants in their official capacities for violations of the United States Constitution and the Connecticut Constitution are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 4.    First Amendment

Mr. Pape asserts claims that during his fifteen-day confinement in a cell on quarantine status, Warden Robert Martin, Lieutenant O'Casio, and Medical Supervisor Shea deprived him of all contact with the outside world in violation of his First Amendment rights to association and

free speech. Compl. ¶¶ 29-31. The Supreme Court has acknowledged that a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

### a.    Visitation – Family Members

"[F]reedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *see also Malave v. Weir*, 750 F. App'x 65, 67 (2d Cir. 2019) (summary order) (noting that "*Overton* did not consider whether there is a First Amendment right to visitation in prison . . . ," and that "[c]ases in this circuit also have not clearly established a right to spousal visitation in prison."). Moreover, a prisoner's constitutional right is not violated by limitations on visitation if the procedure "bear[s] a rational relation to legitimate penological interests." *Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *13 (S.D.N.Y. Sept. 26, 2019) (quoting *Overton*, 539 U.S. at 132); *see also Patterson v. City of New York,* No. 11-CV-7976, 2012 WL 3264354, at *7 (S.D.N.Y. Aug. 9, 2012) ("[L]imitations on visits that are reasonably related to a legitimate penological interest do not violate a prisoner's constitutional right."). A court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton,* 539 U.S. at 132.

Mr. Pape alleges having been confined with his cellmate who had exhibited symptoms of COVID-19 in a cell for fifteen days and that during that time, he was unable to visit with his family in violation of his First Amendment right to association. Compl. ¶ 22. Due to the highly

contagious and potentially deadly nature of COVID-19, Mr. Pape has not alleged sufficient facts

to raise an inference that the visitation restrictions imposed by Warden Robert Martin, Lieutenant

O'Casio, and Medical Supervisor Shea during his confinement in the quarantine cell were

unreasonably related to a legitimate goal of protecting the safety and health of visiting family

members, staff and inmates, including him. *See, e.g.*, *Eze v. Higgins*, No. 95-CV-6S, 1996 WL

861935, at *3–4 (W.D.N.Y. Mar. 20, 1996) (dismissing right to association claim asserted by

inmate who was placed in quarantine due to an outbreak of a contagious disease because inmate

"ha[d] no clearly established right to unfettered free association" and quarantine was a

reasonable response toward the legitimate penological goal of protecting prisoner health and

safety").

Accordingly, this First Amendment association claim is dismissed. *See* 28 U.S.C. §

1915A(b)(1).

### b.      Telephone Calls to Family

As a preliminary matter, research has revealed no Supreme Court or Second Circuit cases

holding that the First Amendment guarantees a prisoner the right to telephone use. *See Baxter v.

Wagner*, 802 F. App'x 32, 33 n.1 (2d Cir. 2020) ("This Court has not addressed whether a

prisoner has a First Amendment right to make phone calls, but at least one Circuit has held they

do in at least some circumstances."); *McMillian v. Cty. of Onondaga*, 710 F. App'x 458, 460 (2d

Cir. 2017) ("Assuming, without deciding, that a prisoner has a limited right to use a telephone to

communicate with his attorney and perhaps others. . . ."). Indeed, courts considering

prison telephone restrictions have agreed that "[p]risoners have no constitutional right to

unlimited telephone use." *Altayeb v. Chapdelaine*, 3:16-CV-00067 (CSH), 2016 WL 7331551, at

*6 (D. Conn. Dec. 16, 2016) (citing *See Pitsley v. Ricks*, No. 96-0372, 2000 WL 362023, at *4 (N.D.N.Y. March 31, 2000); *see also Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) (explaining that "states have no obligation to provide the best manner of access to counsel" and "restrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel").

District Courts within the Second Circuit have held that restrictions on telephone usage do not infringe on inmates' First Amendment rights if alternate means of communicating with others outside of prison are available. *See Riddick v. Arnone*, No. 3:11cv631(SRU), 2012 WL 2716355, at *3, 6 (D. Conn. July, 2012) (dismissing claim that prison officials denied Plaintiff access to telephone on ground that inmates do not have a "constitutional right to unrestricted telephone use" and Plaintiff did not allege that he was barred from communicating through mail during period when he could not use telephone); *Martinez v. Healey*, No. 14-CV-302 NSR, 2014 WL 5090056, at *3–4 (S.D.N.Y. Oct. 10, 2014) ("Because there is no right to unlimited telephone calls, and because there is no allegation that Plaintiff was deprived of all alternate methods of communication, that aspect of the complaint fails to state a plausible claim for relief as against any defendant."); *Ahlers v. Townsend*, No. 9:12-CV-0575 DNH/TWD, 2014 WL 4365277, at *5 (N.D.N.Y. Aug. 28, 2014) ("While a prisoner has a constitutional right to communicate with the outside world, this right does not include a guarantee of a specific means of communication. Thus, for example, there is no constitutionally guaranteed right of a prisoner to unrestricted use of a telephone.").

Mr. Pape alleges that from October 30, 2020 to April 13, 2020, officers would not permit him to use the telephone to make social calls to family members or to make legal calls. Compl. ¶

23. Mr. Pape contends that these restrictions on telephone use violated his First Amendment right to free speech. *Id.* ¶ 30.

Mr. Pape has alleged that he attempted to communicate with his family by mail, but prison officials did not come to his cell to pick up the letters to be mailed. *Id.* ¶ 23. Thus, he argues that he had no alternative means of communication with his family. *Id.*

In the absence of clear legal guidance on the scope of this claim, the Court will permit this First Amendment claim to proceed for further development of the record, before addressing it more definitively.

### c.      Legal Telephone Calls

The alleged restriction on access to legal telephone calls may be construed as a claim of denial of access to courts. It is well settled that inmates have a First Amendment "right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996). The "right of access to the courts," requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds*, 430 U.S. at 825. Thus, prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.

To state a claim for denial of access to the courts, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *Lewis*, 518 U.S. at 351-53. To establish an actual injury, an inmate must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a "nonfrivolous" legal claim. *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002) ("Whether an access claim turns on

14

a litigating opportunity yet to be gained or an opportunity already lost . . . plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court (quoting *Lewis*, 518 U.S. at 353 & n.3)).

Mr. Pape does not identify whether the individual that he sought to reach by telephone during the fifteen-day period involved a legal matter. Nor does Mr. Pape allege that his lack of access to the telephone deprived him of the opportunity to raise a non-frivolous claim or otherwise prejudiced a civil or criminal matter. Thus, Mr. Pape has not met the injury requirement in *Lewis*.

Accordingly, Mr. Pape's First Amendment claim regarding the restriction of his use of the telephone to make legal calls from March 30, 2020 to April 13, 2020 is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### d.    Outgoing Mail

The Second Circuit has recognized that a prisoner's right to the "'free flow of incoming and outgoing mail'" is guaranteed by the First Amendment. *Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir. 2006) (quoting *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003)). But an inmate's incoming mail may be regulated if the regulation is "reasonably related to legitimate penological interests." *Thornburgh v. Abbott,* 490 U.S. 401, 404 (1989); *see also Turner v. Safley,* 482 U.S. 78, 89 (1987) (restrictive prison regulations, including restrictions on First Amendment rights, are valid if reasonably related to legitimate penological interests and are not "an exaggerated response to prison concerns."). An inmate's outgoing mail is afforded greater First Amendment protection than incoming mail. Restrictions on outgoing mail are justified only if they further "one or more of the substantial governmental interests of security, order, and rehabilitation . . .

[and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Thornburgh,* 490 U.S. at 408.

However,

> as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received.

*Davis*, 320 F.3d at 351 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

Generally, a plaintiff must allege "specific allegations of invidious intent or of actual harm where the incidents of mail tampering are few and thus the implication of an actionable violation is not obvious on its face." *Id.; see also Riley v. Semple*, No. 3:17-CV-45 (VAB), 2017 WL 507214, at *3 (D. Conn. Feb. 7, 2017).

Mr. Pape alleges that during the two-week period that he was quarantined in a cell, no one came to pick up letters that he had written to his family. Compl. ¶ 23.  But, Mr. Pape does not indicate how many letters he attempted to mail or whether he attempted mail letters on more than one day during the two-week period that he was confined in the quarantine cell. Thus, the Court cannot discern whether there was an ongoing practice of unjustifiable interference with his attempts to send outgoing social mail.

Nevertheless, at this early stage of the case, the Court will permit this First Amendment free speech claim involving outgoing mail claim to proceed for further development of the record.

16

### 5.    The Eighth Amendment Deliberate Indifference Claim

Mr. Pape contends that the actions of Warden Robert Martin, Lieutenant O'Casio, and Medical Supervisor Shea in quarantining him in a cell with an inmate who had exhibited signs of having contracted COVID-19 for fifteen days, despite the fact that he had exhibited no COVID-19 symptoms, and depriving him of showers, clean laundry, the removal of trash from his cell, and all contact with the outside world caused him emotional distress and constituted deliberate indifference to his health or safety in violation of the Eighth Amendment. Compl. ¶ 29.

In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs . . . [or] the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See*

*Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the prison officials possessed culpable intent; that is, they knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

a.    **Showers**

Mr. Pape alleges that Warden Robert Martin and Lieutenant O'Casio denied him a shower for fourteen days during his confinement in the quarantine cell. Compl. ¶ 22. In response to his requests to be permitted to shower during this period, prison officials provided Mr, Pape with a small bucket to use to wash himself in his cell. *Id.*

Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *See Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation"). Courts in the Second Circuit have held that temporary denials of access to a shower for up to two weeks typically do not constitute a serious deprivation of a basic human need. *See, e.g.*, *Rogers v. Faucher*, No. 3:18-cv-01809 (JCH), 2019 WL 1083690, at *5 (D. Conn. Mar. 7, 2019) (six-day deprivation of shower use did not constitute sufficiently serious deprivation of a human need); *George v. McGinnis*, No. 05-

CV-84 (Sr), 2008 WL 4412109, at *4–5 (W.D.N.Y. Sept. 23, 2008) (deprivation of showers for thirteen days does not satisfy the objective element of an Eighth Amendment claim); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (dismissing Eighth Amendment claims as insufficient under the objective test because "a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'" (quoting *Cruz v. Jackson,* No. 94 Civ. 2600 (RWS), 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) (holding denial of showers for two weeks, after which inmate plaintiff was permitted only cold showers, does not state Eighth Amendment claim based on conditions of confinement))); *Waring v. Meachum*, 175 F. Supp. 2d 230, 241-42 (D. Conn. 2001) ("[T]he prohibition of showers and failure to provide a change of clothing during the seven day lockdown period does not demonstrate that plaintiffs were deprived of a minimum civilized level of life's necessities.").

Mr. Pape alleges an inability to shower for fourteen days, although he could clean himself using a bucket provided by officers. Compl. ¶ 22. The Court concludes that the temporary denial of access to a shower did not rise to the level of a substantial deprivation of a basic human need. Thus, Mr. Pape has not asserted facts to meet the objective element of the Eighth Amendment standard.

Accordingly, this Eighth Amendment claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### b.    Laundry

Mr. Pape alleges that Warden Robert Martin and Lieutenant O'Casio failed to make arrangements for him "to get [his] laundry done" for fifteen days. Compl. ¶ 24. Mr. Pape does not allege that he was without clothing or that wearing clothes that became dirty during his two-

week confinement in the quarantine cell impacted his health. Nor does he allege that he could not wash what items of clothing he might have needed in the sink in his cell. Thus, Mr. Pape has asserted no facts to state a claim that the alleged failure of Warden Robert Martin and Lieutenant O'Casio to arrange for a prison employee to wash his clothes during his confinement in the quarantine cell deprived him of a basic human need.

Accordingly, this Eighth Amendment claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### c.    Trash

Mr. Pape alleges that he could not put his trash outside his cell to be picked up the trash from his cell. He claims that the used food trays gave off a "nasty odor." Compl. ¶ 22.  He contends that he should not have been "forced" to eat his meals and sleep while smelling the odor emanating from the food trays that had not been collected by prison officers or officials. *Id.* Mr. Pape alleges that the smell impacted his appetite and caused him to experience sleep deprivation. *Id.* The Court concludes that the facts as alleged state a plausible claim that Mr. Pape suffered a serious deprivation of a human need, due to the "nasty odor" emanating from the used food trays in his cell that were not picked up for two weeks.

Accordingly, this Eighth Amendment claim to proceed against Warden Robert Martin and Lieutenant O'Casio will be permitted to proceed for further development of the record.

### d.    Recreation

The Supreme Court considers exercise to be a basic human need protected by the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991). The Second Circuit has recognized that the Constitution requires "that prison inmates be allowed some out-of-cell

exercise." *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996). Prison officials may limit

the right to out-of-cell exercise, however, where there is a valid "safety exception" or certain

"unusual circumstances." *Id.* at 704 (holding that segregated confinement for long periods does

not violate Eighth Amendment if inmate is provided opportunity for exercise).

Mr. Pape alleges that during the fourteen-day period that he was quarantined, Warden

Martin and Lieutenant O'Casio refused to permit him to leave his cell to participate in recreation.

Compl. ¶ 14. But, given the existence of the restriction on out of cell exercise during Mr. Pape's

period of confinement because of his exposure to his cellmate, who had exhibited symptoms of

having contracted COVID-19, Mr. Pape has not plausibly alleged a constitutional violation. *See*

*Iqbal,* 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a

motion to dismiss.").

Accordingly, this Eighth Amendment claim, that Mr. Pape could not participate in out-of-

cell recreation for fourteen days, will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### d.    COVID-19 Protocols

Mr. Pape claims that Warden Martin. Lieutenant O'Casio and Medical Supervisor Shea

neglected to provide them with any personal protective equipment at the time that he and his

cellmate moved their property to the quarantine cell or during confinement in quarantine cell

with his cellmate. Compl. ¶ 19. He further claims that the Defendants subjected him to a risk of

harm by continuing to confine him in a cell with his cellmate who had exhibited signs of

COVID-19 when he had exhibited no signs of COVID-19. *Id.* ¶ 20.

It is undisputed that "COVID-19 is a highly dangerous disease that poses a significant

risk of severe illness and death[.]" *Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020

WL 2405350, at *21 (D. Conn. May 12, 2020). The Court concludes that Mr. Pape has plausibly alleged that upon learning that his cellmate had exhibited symptoms of COVID-19, Defendants were deliberately indifferent to a serious risk of harm to his health by failing to provide him with a mask and isolating him in a cell apart from his cellmate.

Accordingly, the Court will permit this Eighth Amendment claim to proceed against Warden Robert Martin, Lieutenant O'Casio and Medical Supervisor Shea for further development of the record.

### 6.    Fourteenth Amendment – Due Process

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This Clause protects procedural and substantive rights. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (The Fourteenth Amendment guarantees "more than fair process"; it "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." (internal quotation marks and citations omitted)).

Mr. Pape alleges that before March 30, 2020, Warden Martin, Lieutenant O'Casio and Commissioner Cook neglected to post notices describing changes to housing unit rules and policies regarding the quarantining of inmates who were suspected of having contracted COVID-19, any policies regarding limitations on showers, telephone use, and recreation, or CDC guidelines regarding COVID-19. Compl. ¶ 27. He contends that the failure to post notices and guidelines constituted a violation of due process under the Fourteenth Amendment.

### a.    Substantive Due Process

22

To state a claim that an official's conduct violated substantive due process under the Fourteenth Amendment, a plaintiff must allege that a government official deprived him or her of a fundamental right and that the conduct of the official in doing so "was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (internal quotation marks and citation omitted). Conduct that is merely "incorrect or ill-advised" does not constitute conduct that may form the basis of a substantive due process claim. *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted).

The alleged failure of Commissioner Cook, Warden Robert Martin and Lieutenant O'Casio to post signs regarding COVID-19 restrictions on conditions of confinement and the quarantining of inmates who may contracted COVID-19 or who may have been exposed to someone who contracted the virus does not meet the conscience-shocking conduct necessary to state a substantive due process claim. *See Sandin v. Connor*, 515 U.S. 472, 479 n.4 (1995) (identifying only two examples of conditions that would be shocking enough to violate a prisoner's right to substantive due process: a prison official's involuntary transfer of an inmate to a mental health hospital and a prison doctor's involuntary administration of psychotropic drugs to an inmate); *Lombardi v. Whitman,* 485 F.3d 73, 81 (2d Cir. 2007) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." (internal quotation marks and alteration omitted)). Rather, the conduct, at most, may have been "incorrect or ill-advised." *Lowrance*, 20 F.3d at 537.

Furthermore, "[w]here a particular Amendment provides an explicit textual source of

constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 272-73 (1994) (internal quotation marks omitted). Here, the Eighth Amendment addresses restrictive or harsh conditions of confinement to which Mr. Pape was subjected during his two-week confinement in a quarantine cell. *See, e.g.*, *Marreon McGlory et al. v. Mich. Dep't of Corrections et al.*, No. 2:20-CV-81, 2020 WL 4362307, at *3–4 (W.D. Mich. July 30, 2020) ("In this case, there is a specific constitutional amendment that applies to Plaintiffs' claims. As discussed below, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiffs concerning their claim regarding conditions in the quarantine cell. . . . Consequently, Plaintiffs' substantive due process claim will be dismissed." (citation omitted)).

Accordingly, the Fourteenth Amendment substantive due process claim asserted against Warden Robert Martin, Lieutenant O'Casio and Commissioner Cook will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### b.    Procedural Due Process Claim

Procedural due process requires that government action "be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). For a

prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 472 (1995).

Mr. Pape has alleged no facts to suggest that he had a liberty interest in the posting of signs or policies regarding the handling of the COVID-19 pandemic by prison officials at Corrigan-Radgowski. Furthermore, to the extent that Mr. Pape is attempting to assert a claim that Warden Robert Martin and Lieutenant O'Casio denied him procedural due process by subjecting him to restrictive conditions in the quarantine cell without providing him with a hearing, he has not alleged that the conditions implicated a liberty interest. In *Sandin*, the Supreme Court concluded that punitive segregation for 30 days did not impose an atypical and significant hardship. *Id.*

Here, Mr. Pape was confined in the quarantine cell for at most fifteen days. The allegations regarding the conditions to which he was exposed during this temporary period of confinement do not constitute an atypical or significant hardship that would warrant due process protection prior to his placement in the quarantine cell.

Accordingly, the Fourteenth Amendment procedural due process claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## 7.    Fourteenth Amendment – Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. It does not mandate identical treatment for each individual or group of individuals. Instead, it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).

To state a plausible equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Mr. Pape has not alleged that the defendants treated him differently or discriminated against him because of his membership in a protected class or based on some suspect classification.

Absent allegations to support "class-based" discrimination, an individual may state an equal protection claim by alleging that he or she has been intentionally and "irrationally singled out as a . . . class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). In the Second Circuit, a plausible class of one claim requires a class-of-one plaintiff to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). Thus, Mr. Pape must assert facts regarding the existence of a person who is "*prima facie* identical" to him or her and who was treated differently. *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019).

Mr. Pape fails to offer any facts about another inmate comparator who was plausibly so similarly situated to him as to raise an inference that no rational basis exists for the differential treatment.

Accordingly, because Mr. Pape does not allege that he was treated differently than any other similarly-situated person on the basis of a suspect classification or that he was singled out for arbitrarily discriminatory treatment, his conclusory allegation that Defendants violated his

rights under the Equal Protection Clause of the Fourteenth Amendment will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## II.       Motion for Appointment of Counsel [ECF No. 6]

Mr. Pape seeks the appointment of *pro bono* counsel. Mot. for Appointment of Couns., ECF No. 6 (Oct. 19, 2020) ("Mot."). Civil litigants do not have a constitutional right to the appointment of counsel. *See Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68-69 (2d Cir. 2011) ("A party has no constitutionally guaranteed right to the assistance of counsel in a civil case."). Thus, the decision to appoint *pro bono* counsel in a civil case is discretionary. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) (noting district judges are afforded "broad discretion" in determining whether to appoint *pro bono* counsel for an indigent litigant in a civil case); 28 U.S.C. § 1915(e)(1) ("The court *may* request an attorney to represent any person unable to afford counsel." (emphasis added)).

In considering whether to appoint *pro bono* counsel for an indigent litigant, a district court must "first determine whether the indigent's position seems likely to be of substance." *See Hodge*, 802 F.2d at 61. "Even where the claim is not frivolous, counsel is often unwarranted where the indigent[] [litigant's] chances of success are extremely slim." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 171 (2d Cir. 1989) (*per curiam*); *see also Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit). Although the Court has determined that two of the First Amendment claims and two of the Eighth Amendment claims are plausible, the Court cannot conclude at this time that Mr. Pape is likely to succeed on the merits of those claims.

27

Additionally, an indigent litigant must show that he or she attempted to secure legal representation or assistance independently before a district court will consider the appointment of *pro bono* counsel. *See Hodge*, 802 F.2d at 62. Mr. Pape made three unsuccessful attempts to secure legal representation in 2020. Mot. at 4-5. He concedes that he has not contacted the Inmates' Legal Aid Program ("ILAP"). *Id.* at 5. Although the attorneys at ILAP are precluded by their contract with the Department of Correction from representing inmates, the attorneys may be available to answer questions or provide instruction on how to conduct discovery and to draft motions or memoranda in response to motions.

Because Mr. Pape has not demonstrated that legal assistance or representation is unavailable or that his claims are likely to succeed on the merits, the motion for appointment of counsel is denied without prejudice. He may file a new motion at a later stage of the litigation of the case after he has attempted to secure legal assistance and representation on his own.

## ORDERS

The Court enters the following orders:

**(1)** The requests seeking injunctive and declaratory relief for violations of Mr. Pape's federal constitutional right and rights under state law, all federal constitutional claims asserted against Commissioner of Correction Rollin Cook in his individual capacity, the First Amendment association and access to courts claims, the Eighth Amendment conditions of confinement claims related to restrictions on showering, laundry, and recreation and the Fourteenth Amendment due process and equal protection claims are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The requests for monetary damages for violations of Mr. Pape's First, Eighth and Fourteenth Amendment rights and for violations of Mr. Pape's rights under state law

by the Defendants in their official capacities are **DISMISSED** under to 28 U.S.C. § 1915A(b)(2).

The Court will permit the First Amendment freedom of speech claim related to denial of telephone calls and the First Amendment freedom of speech claim involving the denial of outgoing mail to proceed against Warden Martin and Lieutenant O'Casio in their individual capacities, the Eighth Amendment claims related to Mr. Pape's confinement in the quarantine cell for two weeks with his cellmate who had exhibited signs of COVID-19 without personal protective equipment to proceed against Warden Martin. Lieutenant O'Casio and Medical Supervisor Shea in their individual capacities, the Eighth Amendment claim related to Mr. Pape's confinement in the quarantine cell for two weeks with no opportunity to dispose of his trash to proceed against Warden Martin and Lieutenant O'Casio in their individual capacities and the state law claims to proceed against all Defendants in their individual capacities.

The Motion for Appointment of Counsel, [**ECF No. 6**], is **DENIED**. Mr. Pape may file a new motion at a later stage of the litigation of the case after he has attempted to secure legal assistance and representation on his own.

**(2)**     The Clerk of Court shall verify the current work addresses of Commissioner Rollin Cook, Warden Robert Martin, Lieutenant O'Casio and Medical Supervisor Shea with the Department of Correction Legal Affairs Unit. The Clerk of Court shall mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, but no later than **July 9, 2021,** the Clerk of Court shall report to the Court on the status of the requests. If any defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required

to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

 **(3)** Defendants Cook, Martin, O'Casio and Shea shall file their response to the Complaint, either an Answer or motion to dismiss, by **September 10, 2021**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

 **(4)** Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **January 14, 2022**. Discovery requests need not be filed with the Court.

 **(5)** All motions for summary judgment shall be filed by **February 18, 2022** within seven months (210 days) from the date of this order.

 **(6)** If Mr. Pape changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Pape should write PLEASE NOTE MY NEW ADDRESS on the notice. Putting a new address on a letter without indicating that it is a new address is insufficient. If Mr. Pape has more than one pending case, he should indicate all case numbers in the notification of change of address. Mr. Pape should also notify the attorney for the defendants of his new address.

 **(7)** Mr. Pape shall utilize the Prisoner E-filing Program when filing documents with the Court. Mr. Pape is advised that the Program may be used only to file documents with the Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on defendants' counsel by regular mail.

 **(8)** The Clerk shall immediately enter the District of Connecticut Standing Order Re:

Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

      **(9)**    The Clerk shall send a courtesy copy of the complaint, and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

      **SO ORDERED** at Bridgeport, Connecticut this 28th day of May, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

31